

**FILED & ENTERED**

**MAY 12 2021**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** craig    **DEPUTY CLERK**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re: | Case No.: 6:18-bk-16831-MH |
| YOUNG JIN YOON | Chapter: 7 |
| Debtor | Adv. No.: 6:18-ap-01210-MH |
| VIVIAN KIM aka MYOUNG SHIN KIM | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff | |
| v. | |
| YOUNG JIN YOON, an individual, HYUN MYUNG PARK aka HYUN M. PARK, and JOSHUA S. PARK aka JOSHUA SEUNGHUN PARK aka JOSHUA PARK | |
| Defendants | |

1

I.  PROCEDURAL BACKGROUND[1]

On August 13, 2018, Young Jin Yoon ("Debtor") filed a Chapter 7 voluntary petition, commencing this above-captioned bankruptcy case. In his petition, Debtor listed $190,000 in unsecured debt to Myoung Shin Kim a.k.a. Vivien Kim ("Plaintiff").

On October 24, 2018, Plaintiff filed commenced adversary no. 6:18-ap-01210-MH by filing a nondischargeability complaint ("Complaint") against Debtor, Debtor's wife, Hyun Myung Park ("Wife"), and their son, Joshua Seunghun Park ("Son") (collectively, "Defendants"). The first two claims for relief were only against the Debtor for the nondischargeability of the $190,000 debt pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). The third, fourth, and fifth claims for fraudulent transfer, declaratory relief, and injunctive relief were pled against all Defendants. Defendants filed an answer on November 9, 2018. Plaintiff amended the Complaint on November 28, 2018. [ECF Dkt. 10]. On October 4, 2019, Plaintiff and Defendant filed their joint pre-trial stipulation. [ECF Dkt. 21, hereinafter, "Pretrial Stip"].

On August 17, 2020, Plaintiff filed a motion for summary judgment on all causes of action, except for the declaratory and injunctive relief causes of action. [ECF Dkt. 47]. The motion included a declaration [ECF Dkt. 47-1] (hereinafter, "Pl.'s Decl."), an exhibit showing copies of bank statements and checks [ECF Dkt. 47-1] (hereinafter, "Pl.'s Ex. 1), and a statement of undisputed facts pursuant to LBR 7056-1(b)(2) [ECF Dkt. 47-2] (hereinafter, "Pl.'s Stmt.").[2] Plaintiff also filed a request for judicial notice [ECF Dkt. 48] attaching copies of the joint pretrial stipulation, Plaintiff's trial exhibits 1-30, and Defendants' trial exhibit 4 (hereinafter, "Pl.'s Tr. Ex." or "Def.'s Tr. Ex."). Defendants filed an opposition on November 3, 2020. [ECF Dkt. 51].

---

[1] Only the directly relevant pleadings have been included herein.

[2] The Court notes there was no proof of service of process attached to the motion, however, Defendants responded and did not object.

2

As Plaintiff pointed out in her reply [ECF Dkt. 52], filed on November 5, 2020, the opposition contained no evidence, whether in the form of declarations, a statement of disputed facts, or exhibits. Because of the lack of evidence, the legal arguments in the opposition were recitations of legal conclusions and did not raise any issue of law to challenge Plaintiff's position. Additionally, the opposition was filed seven days late.

At the hearing on the motion on November 18, 2020, the Court closed the evidentiary record as the deadline to file had passed on October 28, 2020. The hearing was continued for supplemental briefing on the issues of jurisdiction and standing with respect to the fraudulent transfer action. Plaintiff filed her brief timely on December 31, 2020. [ECF Dkt. 58]. Defendants filed their opposition one day late on January 14, 2021. [ECF Dkt. 60]. Plaintiff filed a reply on February 1, 2021, twelve days after the deadline, stating that she had filed an action in state court, which has been stayed pending the Court's exercise of jurisdiction. [ECF Dkt. 61].

II.     UNDISPUTED FACTS[3]

Debtor and Wife imported and sold a well-known brand of plum extract from Korea through their business, JSM, Inc. ("JSM") [Pl.'s Decl. ¶ 3]. Plaintiff often purchased their plum extract. [Pl.'s Stmt. No. 54]. JSM's products were displayed and sold in Korean supermarkets and shops in Los Angeles through the summer of 2018. [Pl.'s Decl. ¶ 3]. Plaintiff has known Debtor and Wife since 2008. *Id*. In 2014, Debtor and Wife came to Plaintiff's office, and Wife asked to borrow money to purchase plum extract products from Korea for Debtor and Wife's business. [*Id.* at ¶ 4]. Plaintiff loaned them $60,000, and Debtor and Wife began coming to Plaintiff twice a year to borrow money, stating they needed the loans to purchase the plum extract. [*Id.* at ¶ 4,

---

[3] As Defendants did not point to, nor provide any evidence to the contrary, Plaintiff has established that the facts in this section are undisputed.

3

5]. Although Wife did most of the communicating, Debtor always accompanied her and agreed that the loans from Plaintiff would be used for importing goods from Korea. [Pl.'s Decl. ¶ 16, Pretrial Stip., Pg. 22 ¶ 269]. For each loan, per Debtor and Wife's request, Plaintiff gave Debtor and Wife several checks with the payee line blank allowing them to use their discretion as to whom the checks should be made out to. [Pl.'s Stmt. Nos. 39-43]. In return, Debtor and Wife gave Plaintiff post-dated checks, usually drawn on JSM's account. [*Id.* at 44-45].

The debt at issue arises from oral contracts for three loans borrowed on April 25, 2017, November 16, 2017, and May 1, 2018, each loan in the amount of $100,000. [*Id.* at 23-26]. As of the petition date, the Debtor and Wife still owed $100,000 on the May 1, 2018 loan, $67,500 on the November 16, 2017 loan, and $25,000 on the April 25, 2017 loan, totaling $190,000. [Pl.'s Stmt. Nos. 29-33; Pretrial Stip., Pg. 5 ¶ 29, Pg. 7 ¶ 57, Pg. 8 ¶ 75].

Plaintiff made these three loans to Debtor and Wife only because of their statements that the loan proceeds would be used to import plum extract from Korea through their business, JSM, Inc. [Pl.'s Stmt. Nos. 50, 52, 85; Pl.'s Decl. ¶ 17]. Although JSM was an active cooperation at the time Plaintiff made the loans, JSM was winding down its business. [Pl.'s Stmt. Nos. 55, 59, 63, 68, 70, 71]. More importantly, however, JSM stopped purchasing products sometime before June 2017, yet Debtor and Wife continued to borrow money from Plaintiff for the stated purpose of purchasing plum extract. [Pl.'s Stmt. No. 63; Pretrial Stip., Pg. 26 ¶¶ 351, 353]. By either January or February 2018, JSM no longer kept any inventory in its warehouse. [Pl.'s Stmt. No. 68]. By March 2018, JSM completely ceased all business activities. [*Id.* at 70-71]. On August 6, 2018, one week prior to the petition date, JSM was dissolved. [*Id.* at 77-78].

Plaintiff did not know that JSM was in the process of ceasing its operations. [*Id.* at 61, 66]. Debtor and Wife never told Plaintiff that the business was suffering or that they were planning on closing JSM. [*Id.* at 60, 65]. Additionally, as JSM's products were still on display at the time

of the last loan on May 1, 2018, Plaintiff had no reason to believe JSM was not actively doing business. [*Id.* at 72].

None of the Plaintiff's loans were used to purchase JSM products. [*Id.* at 75, 76]. Specifically, of the three outstanding loans, the loans from November 16, 2017 and May 1, 2018 were not used to purchase plum extract. [*Id.* at 73, 74]. Instead they were used as cash deposits for Debtor and Wife. [*Id.* at 80-82]. Prior to dissolving JSM, Debtor emptied its account. [Pl.'s Stmt. ¶ 79; Pl. Tr. Ex. 16-19]. Debtor distributed $26,630 to himself and $93,000 to Wife between May and June 2018. [Pl.'s Stmt. Nos. 80-81; Pl. Tr. Ex. 16-39:42]. Between January and April 2018, Debtor distributed $43,000 to Wife. [Pl.'s Stmt. No. 82; Pl. Tr. Ex. 16-34:38]. These distributions were all in addition to the standard payroll. [Pl.'s Stmt. Nos. 80-82]. Plaintiff stated she would not have loaned Debtor and Wife money had she known that JSM was in decline and that Debtor and Wife were not using the loan proceeds towards product purchases. [Pl.'s Decl. ¶ 17; Pl.'s Stmt. Nos. 83-85].

Additionally, when Debtor and Wife met with Plaintiff on May 1, 2018 for the last $100,000 loan, they also requested to swap checks they had post-dated and previously given to Plaintiff as part of the repayment schedule. [Pl.'s Stmt. Nos. 56, 87]. Debtor and Wife gave Plaintiff thirteen post-dated checks drawn on JSM's account in the amount of $67,500 and five checks in the amount of $62,500 drawn on Wife's personal account in exchange for the previously given checks, which had been drawn from their joint account and JSM's account (or "Check Swap"). [*Id.* at 89-93]. On May 2, 2018, JSM disbursed two checks for a total of $64,000 to Wife, who in turn deposited them to her new personal account. [*Id.* at 109-110]. The five replacement checks that were drawn on Wife's personal account cleared from the deposited funds borrowed on May 1, 2018. [*Id.* at 110].

5

Of the total amount borrowed by Debtor and Wife, $70,000 worth of checks had been paid to Wife. [*Id.* at 96]. Debtor and Wife paid back $62,500 of this amount through the five replacement checks drawn on Wife's personal account and $7,500 of this amount from the other five replacement checks drawn on Debtor and Wife's joint account in the total amount of $70,000. [Pl.'s Stmt. Nos. 91, 92, 97, 99, 106, 110; Pretrial Stip., Pg. 6 ¶ 44; Pl.'s Tr. Ex. 6, 10, 27]. The Check Swap combined with the May 1, 2018 loan ensured that Wife could pay back any debt that she presumably owed based on the amount of checks specifically made out to her. [Pl.'s Stmt. Nos. 91, 92, 97, 99, 107, 110, 113; Pretrial Stip. Pg., 6 ¶ 44; Pl.'s Ex. 1].

At the time of the petition, Wife temporarily shared a fifty-percent interest with Son in the house that she and Debtor lived in located at 32229 Cedar Crest, Temecula, California 92592 ("House"). [Pl.'s Stmt. No. 115; Pl.'s Tr. Ex. 20, 27]. Son had been the sole owner on title of the House until he deeded it to Wife and himself in January 2018. [Pl.'s Stmt. No. 116]. Three days after the 341(a) meeting, on September 20, 2018, Wife transferred her interest back to Son. [Pl.'s Stmt. Nos. 121-122; Pl.'s Tr. Ex. 20, 27].

III.    DISCUSSION

First, as the Court noted above, Defendants have submitted no evidence to create an issue of fact. Defendants' opposition contained no evidence, whether in the form of declarations or exhibits, nor did Defendants submit any evidentiary objections to the Plaintiff's evidence. Additionally, the Defendants do not cite to any evidence contained in the record, nor do they point to any legal issue. Thus, in considering whether to grant summary judgment for the Plaintiff, the only issue is whether the Plaintiff has met her burden to show there is no genuine issue of material fact. The Court finds she has met her burden as to the § 523(a)(2)(A) action, but not as to § 523(a)(6) action. Second, with respect to the fraudulent transfer action, the Court considers its subject matter jurisdiction, concluding it has none.

1. <u>Summary Judgment On The Nondischargeability Actions</u>

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c) (incorporated by FED. R. BANKR. P. 7056). The moving party has the burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. *See id.* at 324. The court must view the evidence in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *See id.*

If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See id.* The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material fact. . . ." *Matsushita Electrical Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Plaintiff is moving for summary judgment seeking to except the debt from discharge based on false misrepresentation under §§ 523(a)(2)(A) and (a)(6), which state:

> (a) A discharge under section 727, 1141, 11921 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>>
>> . . .
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C § 523(a)(2)(A), (6).

Plaintiff also seeks to have the transfer of the House from Wife to Son avoided as a fraudulent transfer under CAL. CIV. CODE § 3439.04(a)(1),[4] which provides, as relevant:

> (a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

### A. Plaintiff Has Met Her Burden To Show That $167,500 Of The Debt Is Nondischargeable Pursuant To § 523(a)(2)(A)

To prevail on a claim under § 523(a)(2)(A), a creditor must satisfy the following five elements:

> (1) debtor made representations;
> (2) at the time debtor knew the representations were false;
> (3) debtor made representations intending to deceive the creditor;
> (4) creditor relied on such representations;
> (5) creditor sustained the alleged loss as the proximate result of the misrepresentations.

*See, e.g.*, *In re Sabban*, 600 F.3d 1219, 1222 (9th Cir. 2010).

---

[4] Although Plaintiff did not cite to any statute on the fraudulent transfer causes of action in her complaint, she argues in her motion for summary judgment that the transfer should be avoided pursuant to CAL. CIV. CODE § 3439.04(a).

8

Here, the crux of Plaintiff's argument rests on a representation of future intention—specifically, that Debtor (and Wife)[5] falsely represented that they would use the loan proceeds to purchase plum extract for JSM. Essentially, Plaintiff has pled promissory fraud. There is a subset of § 523(a)(2)(A) authority in the Ninth Circuit that validates nondischargeability actions for promissory fraud:

> These cases require proof that at the time the promise was made, it was then known to the maker to be false and that there was no intent or ability to perform the promise. *See, e.g., Tobin v. Sans Souci Ltd. P'ship (In re Tobin),* 258 B.R. 199, 203 (9th Cir. BAP 2001) (addressing California law); *McCrary v. Barrack (In re Barrack),* 217 B.R. 598, 606 (9th Cir. BAP 1998) (promise made with positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A), citing *Rubin v. West (In re Rubin),* 875 F.2d 755, 759 (9th Cir.1989)); *Sharp,* 2009 WL 511640 at *5 n. 23 (representation establishing actual fraud may be a promise) (citations omitted).

*In re Carlson*, 426 B.R. 840, 854 (Bankr. D. Idaho 2010) (emphasis added); *see also In re Firestone*, 26 B.R. 706, 715 (Bankr.S.D.Fla.1982) (A promise can be found fraudulent "where the promisor knew or should have known of his prospective inability to perform.").

Intent to deceive is a factual question that may be inferred from circumstantial evidence. *In re Barrack*, 217 B.R. 598, 607 (Bankr. App. 9th Cir. 1998) ("Fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct."); *In re Kennedy*, 108 F.3d 1015, 1018 (9th Cir. 1997) as amended (Mar. 21, 1997) ("Intent to deceive can be inferred from surrounding circumstances."). Therefore, in determining whether Debtor had no intention to perform, the Court may look to all the surrounding facts and circumstances. *See id.*

Here, at the time Debtor borrowed $200,000 from Plaintiff on November 2017 and May 2018, JSM was no longer purchasing product, having ceased imports by June 2017, yet Debtor

---

[5] Although Wife played an apparently equal role in borrowing money from Plaintiff, the complaint only proceeds against Debtor. Accordingly, the Court will omit the Wife to the extent her role is unnecessary to the determination of the nondischargeablility actions.

9

continued to represent that the loans would be used to purchase plum extract for JSM from Korea.  However, none of the loan proceeds were used to purchase plum extract, including funds borrowed previously.  Alone, these facts do not establish the falsity of the representations at the time made or that Debtor had the present intent to deceive Plaintiff into lending the funds.  Significantly, though, that JSM did not make a turnaround after June 2017, and ceased all business activities by March 2018, provides the final inference the Court needs to conclude that at the time Debtor borrowed the money, he did not intend to use the funds for the purposes represented, as JSM presently had no ability to perform.  *See In re Carlson*, 426 B.R. at 854.  The Court, viewing the undisputed evidence in toto, finds Debtor's representations at the November and May meeting satisfy the standard of promissory fraud, and accordingly the elements of false representation and intent to deceive.  *See id.; In re Barrack*, 217 B.R. at 607.

Although Plaintiff argued that the April 2017 loan was also a result of false representations as the loan proceeds were not used to purchase plum extract, the Court, viewing the evidence in the light most favorable to the nonmoving party, cannot infer that Debtor presently did not intend to use the loan proceeds as promised where the evidence only shows that JSM stopped purchasing product in June 2017.  *See Anderson*, 477 U.S. at 255; *In re Barrack*, 217 B.R. at 607.

Plaintiff has also shown that she justifiably relied on Debtor's statements because at the time she made the loans JSM products were still being sold at retail locations, and Debtor never indicated that JSM's business was suffering.  *See In re Sabban*, 600 F.3d at 1222.  Plaintiff stated that she would not have lent the money had she known JSM was in the process of winding down.  As a result of the false misrepresentations, Plaintiff lent a total of $200,000.  Of that amount, $67,500 remained due on the November 16, 2017 loan and $100,000 remained due on the May 1, 2018 loan at the time of the bankruptcy filing.  Therefore, Plaintiff has met the elements of reliance and damages.

Accordingly, on the record and the evidence before the Court, Debtor having failed to provide any evidence to the contrary, Plaintiff has met her burden to show that there is no genuine issue of material fact as to any of the elements of § 523(a)(2)(A) with respect to $167,500 of the $190,000 debt that the Plaintiff seeks non-dischargeable. *See Celotex*, 477 U.S. at 317.

In this case, in satisfying the standard of § 523(a)(2)(A), Plaintiff has also satisfied state law fraud based on false representations, specifically promissory fraud. *See Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004) ("The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."); CAL. CIV. CODE § 1710 ("A deceit…is either…a promise, made without any intention of performing it."); *Lazar v. Super. Ct.*, 909 P.2d 981, 984 (Cal. 1996) ("Promissory fraud is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.").

The Court notes it has the authority to liquidate the amount of the underlying debt in a state law claim in nondischargeability actions. *See In re Sasson*, 424 F.3d 864, 867 (9th Cir. 2005) *citing to In re Kennedy*, 108 F.3d 1015, 1016 (9th Cir. 1997) ("We have long held that the Bankruptcy Court has jurisdiction to enter a monetary judgment on a disputed state law claim in the course of making a determination that a debt is nondsichargeable."); *see also In re Wen Jing Huang*, 509 B.R. 742, 754 (Bankr. D. Mass. 2014)("[I]n the context of the dischargeability proceeding, the bankruptcy court is not only tasked with determining whether the circumstances for nondischargeability enumerated in § 523(a) are established, but must also necessarily determine

11

the scope of the debtor's liability on the claim and the creditor's right to payment."). Accordingly, as established above, the Court concludes that $167,500 of the $190,000 claimed debt is nondischargeable pursuant to § 523(a)(2)(A).

### B. Plaintiff Has Not Met Her Burden To Show The Debt Is Nondischargeable Pursuant To § 523(a)(6)

To prevail on a claim under § 523(a)(6), a creditor must demonstrate three elements: (1) willful conduct; (2) malice; and (3) causation. *See In re Butcher*, 200 B.R. 675, 680 (Bankr. C.D. Cal. 1996) (*quoting In re Apte*, 180 B.R. 223, 230 (B.A.P. 9th Cir. 1995)). A willful injury is a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). "A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Barboza*, 545 F.3d 702, 706 (9th Cir. 2008) (*quoting In re Jercich*, 238 F.3d 1202, 1209 (9th Cir. 2001)).

Here, Plaintiff argues that the underlying claim rests on a breach of contract, although the Court has noted above that the claim is for a fraudulent misrepresentation. In the Ninth Circuit, "an intentional breach of contract cannot give rise to non-dischargeability under § 523(a)(6) unless it is accompanied by conduct that constitutes a tort under state law." *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008). The Bankruptcy Appellate Panel provided a helpful expansion of this principle:

> There are at least two relevant ways a creditor may take a judgment consisting of damages for breach of contract and prove that it is nondischargeable under § 523(a)(6). The first would be to establish that the breach of contract also

> constituted a tort such as conversion that the debtor undertook willfully and maliciously within the meaning of § 523(a)(6). . . .
>
> Alternatively, the creditor could prove a "tortious breach of contract." But to do so, the creditor would need to show not only tortious conduct, but also that the debtor's conduct violated "a fundamental public policy of the state."

*In re Zeeb*, 2019 WL 3778360 at *6 (B.A.P. 9th Cir. 2019) (citations omitted).

While Plaintiff has established fraud, Plaintiff has not shown that Debtor's conduct violated a fundamental public policy, nor has Plaintiff established that Debtor's breach was accompanied by a conversion undertaken willfully and maliciously. *See id*. Plaintiff argues that Debtor willfully and maliciously used the May 1, 2018 meeting to try and keep Wife clear of any personal debt by swapping out repayment checks and borrowing $100,000 that day to subsequently use that money to pay back checks paid to Wife's name. As deliberate as Debtor's acts may have been, they do not amount to a showing sufficient to establish the required intent to injure the Plaintiff. *See Geiger*, 523 U.S. at 61.

The Court, viewing the evidence in the light most favorable to the nonmoving party, cannot conclude that no reasonable jury would interpret the Check Swap as a protection mechanism for Wife, as only Debtor would benefit from bankruptcy protection, rather than a willful injury to Plaintiff. *See Anderson*, 477 U.S. at 255. Accordingly, Plaintiff has not met her burden to show that there is no genuine issue of material fact with respect to 11 U.S.C. § 523(a)(6). *See Celotex*, 477 U.S. at 317.

2.  <u>Subject Matter Jurisdiction Over The Fraudulent Transfer Action</u>

As the claim for fraudulent transfer is based in state law, and involves non-debtor parties, the Court must first consider whether it has subject matter jurisdiction. Bankruptcy court jurisdiction derives from 28 U.S.C. §§ 1334 and 157. *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004). 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). In turn, the district courts may refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11…to the bankruptcy judges for the district." 28 U.S.C. § 157 (a). Jurisdiction is further broken down between core and non-core proceedings. 28 U.S.C. § 157 (b)(1), (c)(1).

"Core" proceedings are matters "arising under" and "arising in" cases under title 11. *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987). Matters "arise under" title 11 if they involve a *cause of action created or determined by a statutory provision of title 11*. *Id.* (emphasis added). Matters "arise in" a bankruptcy if they concern the administration of the bankruptcy case and have *no existence outside of the bankruptcy*. *Id.* at 97 (emphasis added). Bankruptcy judges may hear and determine core proceedings and enter final orders and judgments. 28 U.S.C. § 157(b)(1).

"Non-core" proceedings are those that do not depend on the bankruptcy laws for their existence and that could proceed in another court even in the absence of bankruptcy. *Wood*, 825 F.2d at 96. These proceedings must be "related to" the bankruptcy case. § 157(c)(1). Related to jurisdiction case contains two subsets: (1) causes of action owned by the debtor that become property of the estate under § 541; and (2) suits between third parties which in one way or

14

another affect the administration of the bankruptcy case. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995).

The primary test for "related to" jurisdiction is the Third Circuit's *Pacor* test:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984) (emphasis added). Most of the circuits, including the Ninth Circuit, have "adopted the *Pacor* test with little or no variation." *Edwards*, 514 U.S. at 308 n.6. A minority seem to have adopted a "slightly different test." *Id.* "But whatever test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." *Id.*

Plaintiff, here, seeks recovery of the House pursuant to CAL. CIV. CODE § 3439.04(a). Although, the bankruptcy code has similar provisions to recover fraudulent transfers under 11 U.S.C. §§ 548(a)(1) and 544(b)(1), which would fall within core jurisdiction, here Plaintiff's action involves only state law. This is because Plaintiff, unlike a Trustee, lacks standing to proceed under §§ 548(a)(1) and 544(b)(1).[6] The matter, therefore, does not arise in or under title 11, and there is no core jurisdiction. *See In re Wood*, 825 F.2d at 96, 97.

---

[6] 11 U.S.C. § 548 states, in relevant part, that "*the trustee* may avoid any transfer . . .of an interest of the debtor in property," if the transfer was made with intent to delay or defraud a creditor. 11 U.S.C. § 548(a)(1)(A) (emphasis added). 11 U.S.C. § 544(b)(1) is the section which authorizes the Trustee to proceed under a state law, such as CAL. CIV. CODE § 3439.04(a) to recover such transfers. § 544(b)(1) provides, in relevant part, that the "trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title." 11 U.S.C. § 544(b)(1). Accordingly, Plaintiff, a creditor, does not have standing to pursue the fraudulent transfer claim, absent

15

Plaintiff also has not provided sufficient evidence or made a showing that recovery of the House could conceivably have any effect on the administration of the bankruptcy estate to satisfy the standard for "related to" jurisdiction. *See Pacor*, 743 F.2d at 984. Plaintiff styles the complaint as seeking recovery of the House against Debtor, Wife, and Son; however, Debtor appears to have never had an ownership interest in the House. Title was only ever between non-debtor third parties, Wife and Son. For a short period, Wife shared a one-half ownership in the House with Son, which she subsequently transferred back to Son after Debtor filed for bankruptcy. The Court notes that Plaintiff neither argues, nor is there any clear indication on the record before the Court that Debtor has a community property interest in the House. To the extent it is possible that Debtor possesses such interest, it is premature for the Court to conduct a community property analysis where Plaintiff lacks standing absent Trustee's avoidance powers. *See* discussion *supra* at note 6. Accordingly, as presented before this Court, the fraudulent transfer proceeding is between third party non-debtors that will not have an effect on the Debtor's estate, foreclosing "related to" jurisdiction. *See Edwards*, 514 U.S. at 307; *Pacor*, 743 F.2d at 984.

THEREFORE, the Court grants in part and denies in part Plaintiffs' motion for summary judgment [ECF Dkt. 47].

IT IS ORDERED that:

1) The motion is GRANTED as to the first cause of action under 11 U.S.C. 523(a)(2)(A), finding the Debtor's debt nondischargeable to Plaintiff in the amount of $167,500;

2) The motion is DENIED as to the second cause of action under 11 U.S.C. § 523(a)(6);

---

the Court's permission pursuant to 11 U.S.C. § 503(b)(3)(B), which has not been granted here. Additionally, even if the creditor brought the action, such avoided transfers are recovered only for the benefit of the estate, and not a sole creditor. *See* 11 U.S.C. § 550.

16

3) The motion is DISMISSED as to the fourth cause of action for fraudulent transfer under Cal. Civ. Code § 3439.04(a);

IT IS SO ORDERED.

###

Date: May 12, 2021

Mark Houle
United States Bankruptcy Judge

17